UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
**VICTOR CLEMENTE,**                                    :

                                    Petitioner,          :

                                                          :   **MEMORANDUM**
                            **-** against **-**           :   **DECISION AND ORDER**
                                                          :   18-CV-1978 (AMD) (LB)
**WILLIAM LEE,**                                         :

                                    Respondent.          :
-------------------------------------------------------------- X

**ANN M. DONNELLY,** United States District Judge.

On March 28, 2018, the petitioner, currently incarcerated at Eastern New York

Correctional Facility, brought this action seeking habeas corpus relief pursuant to 28 U.S.C.

§ 2254.  The petitioner claims that he was denied his Sixth Amendment right to a speedy trial

and that one of his appellate lawyers was ineffective.  For the following reasons, the petitioner's

motion is denied.

## BACKGROUND

### I.    Arrest & Indictment

On November 20, 1986, the petitioner shot and killed Fred Drapete.  He was arrested and

charged with murder in the second degree and criminal possession of a weapon in the second and

third degrees.  (ECF No. 13 at 14.)  Over the next year, the prosecutors repeatedly announced

that they were not ready for trial because they could not find two eyewitnesses—the petitioner's

mother and sister.  On January 26, 1988, the petitioner, who was released on bond, moved to

dismiss the indictment pursuant to Section 30.20 of the New York Criminal Procedure Law

("C.P.L.").  (ECF No. 13 at 57.)  He claimed that he had been materially prejudiced by the delay

in bringing his case to trial because a potentially exculpatory witness had moved away.  (*Id.* at

58-59.)  The prosecution responded that the defendant consented to multiple adjournments, that

it was working diligently with the FBI to locate the witnesses and that the proffered testimony of the missing witness was not exculpatory.  (*Id.* at 62-64.)  On March 22, 1988, the Honorable Seymour Rotker dismissed the indictment, finding the petitioner was denied his right to a speedy trial.  (*Id.* at 69-72.)

## II.   Appeal

The prosecution appealed the dismissal on April 12, 1988.  (*Id.* at 73.)  At that point, the petitioner's trial lawyer was no longer representing him, and no brief was filed on the petitioner's behalf.  The Appellate Division reversed and reinstated the indictment, ruling that the 14-month delay "was not an extraordinarily long time, given the seriousness of the charge, which, by necessity, requires careful preparation." *People v. Clemente*, 541 N.Y.S.2d 583, 584 (2d Dep't 1989).  Noting that the petitioner was at liberty, the court also found that the prosecution's effort to locate witnesses was "a valid reason for delay."  *Id*.  The court remitted the case for further proceedings on the indictment.  *See id*.  When the petitioner failed to appear for his June 13, 1989 court date, a warrant was issued for his arrest.

## III.  Trial

More than 15 years later, in December of 2006, detectives arrested the petitioner in California, where he had been since 1988.  After the petitioner was returned to New York, he moved to dismiss the indictment pursuant to C.P.L § 30.20, arguing that the prosecutors did not exercise due diligence in searching for him after the warrant issued in 1989.  (ECF No. 13-3 at 55-56.)  The Honorable Robert Hanophy denied the motion, finding that the petitioner had avoided apprehension and was thus not deprived of his right to a speedy trial.  (ECF No. 13-2 at 351.)

The petitioner went to trial before the Honorable Richard L. Buchter and a jury on March 31, 2008.  (ECF No. 13-3 at 238.)  The prosecution established the following facts.

On November 20, 1986, officers responding to a reported shooting at 160-16 79th Avenue Flushing, New York found Fred Drapete in the first floor apartment; he was lying face down and had nine bullet holes in his body.  (ECF No. 13-4 at 143-145.)  The petitioner, who lived in the first floor apartment with his family, was sitting next to the victim. (*Id.* at 162-63.)  As officers escorted the petitioner to the patrol car, he looked down at the victim and said, "I have no regrets about that.  I have no regrets."  (*Id.* at 203.)  Detective Peter Fiorello told the petitioner to stop talking and took him to the 107th precinct.  (*Id.*)  Detective Frank Ahearn questioned the petitioner when he arrived at the precinct.  (*Id.* at 231.)  The petitioner said that he fought with the victim, who had a gun, and that the victim shot himself.  (*Id.* at 255.)

Another officer found the victim's two daughters, who were three and four-years-old, hiding in the basement apartment where the victim lived with his wife and two girls.  (*Id.* at 52, 146.)  When the victim's wife arrived shortly thereafter, her younger daughter told her, "Uncle June shot poppa."  (*Id.* at 76-77.)  The girl said that "Uncle June" shot the mirror in the basement, then shot the victim in the arm and followed him upstairs where the children heard more gunshots.  (*Id.*)

Detectives found a 9-millimeter caliber Smith and Wesson semi-automatic pistol lying near the victim's body; the slide on the gun was pulled back and there were no bullets in the gun's clip or in the chamber.  (*Id.* at 106-09.)  There were multiple deformed bullets and shell casings in the basement apartment, the foyer and in the first floor apartment; testing proved that all the ballistics evidence came from the Smith and Wesson.  (*Id.* at 106-109, 221.)  An autopsy of the victim established that he was shot nine times.  (*Id.* at 262-63.)  Six of the bullets entered

his body through the back; the fatal wound, which also entered the victim's back, perforated his lung and aortic arteries. (*Id.* at 262-65, 274-75.)

The defense did not call any witnesses.

On April 8, 2008, the jury convicted the petitioner of second degree murder and weapons possession. (ECF No. 13-5 at 26.) Judge Buchter sentenced the petitioner to concurrent indeterminate prison terms of twenty years to life for murder and five to fifteen years for the weapons possession. (*Id.* at 53.)

## PROCEDURAL HISTORY

### I.   Direct Appeal

The petitioner, represented by counsel, appealed his conviction to the Appellate Division, Second Department. (ECF No. 13 at 81.) He argued that he was denied his Sixth Amendment right to a speedy trial. (*Id.* at 108.) He also challenged the trial court's evidentiary rulings, the prosecutor's comments in summation, and the court's charge to the jury. (*Id.* at 142-63.) Finally, the petitioner claimed that his trial counsel was ineffective for asking the victim's wife about a civil settlement. (*Id.*)

On May 3, 2011, the Appellate Division affirmed the petitioner's conviction, finding that the trial court "properly determined that the defendant's constitutional right to a speedy trial was not violated." *People v. Clemente*, 84 A.D.3d 829, 830 (2d Dep't 2011). The Appellate Division rejected the petitioner's claims about the prosecutor's summation, the trial court's evidentiary rulings, and the jury charge. *Id.* at 830-31. Finally, the court concluded that the petitioner's trial lawyer provided him with effective representation. *Id.* at 831.

The Court of Appeals denied the petitioner's application for leave to appeal on June 23, 2011, and denied his motion for reconsideration on August 31, 2011.  *People v. Clemente*, 17 N.Y.3d 793 (2011), *reh'g denied*, 17 N.Y.3d 814 (2011).

On June 4, 2012, the United States Supreme Court denied the petitioner's petition for a writ of certiorari.  *Clemente v. New York*, 566 U.S. 1035 (2012).

## II.    440.10 Motion to Vacate Judgment

On December 27, 2012, the petitioner moved *pro se* to vacate the conviction under C.P.L. § 440.10.  (ECF No. 13 at 307-14.)  He argued that he was denied his right to counsel when the Appellate Division decided the prosecution's appeal of Judge Rotker's speedy trial dismissal without hearing from the petitioner.  (*Id.*)

Judge Buchter denied the petitioner's motion on April 18, 2013, ruling that "[the trial] court [was] not the proper forum for the relief requested," and that "the proper forum for the relief defendant requests is the Appellate Division."  (ECF No. 13-1 at 10-12.)

## III.    First Writ of Error *Coram Nobis*

On September 11, 2013, the petitioner moved *pro se* for *coram nobis* relief in the Appellate Division on the same ground—that his conviction should be vacated because he was not represented in the 1989 appeal.  (*Id*. at 21-32.)

On February 11, 2015, the Appellate Division granted the petitioner's writ of error *coram nobis* in part, concluding that the petitioner's right to appellate counsel was violated.  *People v. Clemente*, 125 A.D.3d 786, 786 (2d Dep't 2015) (citation omitted).  The court appointed counsel to represent the petitioner, set a briefing schedule, and held the petitioner's application in abeyance.[1]  *Id.*  The petitioner, represented by counsel, argued that the trial court properly

---

[1] The Court of Appeals denied the petitioner's application for leave to appeal on June 15, 2015.  *People v. Clemente*, 25 N.Y.3d 1161 (2015).

dismissed the indictment based on a violation of the petitioner's Sixth Amendment right to a speedy trial. (ECF No. 13-2 at 210.) On May 4, 2016, the Appellate Division found that "there [wa]s no basis to vacate [the] original determination in the decision and order dated May 22, 1989 . . . reversing the order dismissing the indictment, and thereupon reinstating the indictment." *People v. Clemente*, 139 A.D.3d 751, 753 (2d Dep't 2016). The court also denied the "remaining branches of the [petitioner's] application" for a writ of error *coram nobis*. *Id.* at 752. On August 11, 2016, the Court of Appeals denied the petitioner's application for leave to appeal. *People v. Clemente*, 28 N.Y.3d 928 (2016).

## IV.    Second Writ of Error *Coram Nobis*

On April 5, 2017, the petitioner filed his second *pro se* motion for *coram nobis* relief, arguing that he did not receive effective representation on his direct appeal or on the rehearing of the prosecutor's appeal of the speedy trial dismissal. The petitioner argued that his attorney on direct appeal should have challenged Judge Buchter's response to a jury note. He also claimed that his lawyer on the rehearing was ineffective because she did not argue that the Appellate Division should have vacated his conviction instead of ordering a new appeal. (ECF No. 13-2 at 39-56.)

The Appellate Division denied the petitioner's application on December 13, 2017, because the petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Clemente*, 156 A.D.3d 716, 717 (2d Dep't 2017). On March 16, 2018, the petitioner's application for leave to appeal was denied. *People v. Clemente*, 31 N.Y.3d 982 (2018).

## V.    Federal Habeas Proceedings

On March 3, 2017, the petitioner filed a petition for writ of habeas corpus, and made the

same arguments that he made on his direct appeal.  *Clemente v. Lee*, No. 17-CV-1278 (E.D.N.Y.

Mar. 1, 2017), ECF No. 1.  About a week after the filing the Court dismissed the petition without

prejudice at the petitioner's request.  *Clemente v. Lee*, No. 17-CV-1278 (E.D.N.Y. Mar. 22,

2017), ECF Nos. 4, 5.

On March 28, 2018, the petitioner filed this habeas petition.  He did not make claims in

the petition itself; instead, he referenced the filings in connection with his direct appeal, his first

and second writs of error *coram nobis*, and the counseled brief in the re-filed 1989 appeal.  (ECF

No. 1 at 1-15.)  Construing the petitioner's filing to raise the strongest arguments it suggests, I

interpreted his petition to raise the claims he raised in state court and argued in the referenced

briefs. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On January 9, 2019, I granted the respondent's motion to dismiss some of the petitioner's

the claims as untimely—his challenges to the trial court's evidentiary rulings, the prosecutor's

comments in summation, the court's charge to the jury and the court's decision not to dismiss the

indictment on speedy trial grounds, as well as challenges to the effectiveness of his trial counsel

and his counsel on direct appeal.  (ECF No. 14.)  On March 8, 2019, the respondent opposed the

remaining claims—the ineffective assistance of appellate counsel and speedy trial claims.  (ECF

No. 15.)  For the reasons that follow, I deny the petition for a writ of habeas corpus.

### DISCUSSION

A federal court reviewing a habeas petition must not "review a question of federal law

decided by a state court if the decision of that court rests on a state law ground that

is independent of the federal question and adequate to support the judgment." *Coleman v.*

*Thompson*, 501 U.S. 722, 729 (1991).  That is true whether the state court's decision is based on substantive or procedural state law grounds.  *Id.* at 729-30.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to give deference to a state court's decision on the merits.  28 U.S.C. § 2254(a).  A federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015).

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision:  (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case.  *Id.* at 412-13.  The court reviews the last reasoned state court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000).  The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A petitioner can seek federal habeas corpus relief only after he exhausts state court remedies and gives the state courts a fair and full opportunity to review the merits of the

claim.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  In other

words, a petitioner must present "the essential factual and legal premises of his federal

constitutional claim to the highest state court capable of reviewing it."  *Jackson v. Conway*, 763

F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

### I.   State Court Remedy

As explained above, in 1988 the prosecution appealed the trial court's dismissal of the

indictment on speedy trial grounds.  At that point, the petitioner's trial lawyer was no longer

representing him, and the petitioner filed no opposition to the prosecution's appeal.  The

Appellate Division reversed the lower court decision and reinstated the indictment.  The

petitioner moved for *coram nobis* relief claiming that his conviction should be vacated because

he was denied his right to appellate counsel; while the Appellate Division agreed that he had

been denied the right to counsel, it did not vacate the conviction.  Rather, the court ordered *de

novo* review of the prosecution's appeal from the trial court's order dismissing the indictment.

The Appellate Division appointed counsel for the petitioner, and reserved judgment on the merits

until both sides briefed the appeal.  The Appellate Division ultimately concluded that its original

decision reinstating the indictment was correct.  The petitioner argues that the Appellate Division

should have vacated the conviction and released him from custody.  The respondent opposes.

First, the respondent argues that the petitioner's claim does not present a federal

constitutional issue.  *Estelle v. McGuire*, 502 U.S. 62, 71 (1991) ("[I]t is not the province of a

federal habeas court to reexamine state court determinations on state-law questions. In

conducting habeas corpus review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States."); *see also Ashby v. Senkowski*,

2003 WL 21518841, at *4 (E.D.N.Y. July 3, 2003) ("[F]ederal habeas corpus relief is not

available for state law errors that do not amount to federal constitutional violations."). Federal law sets "certain minimum requirements that States must meet but may exceed in providing appropriate relief." *Danforth v. Minnesota*, 552 U.S. 264, 288 (2008) (quoting *American Trucking Assns., Inc. v. Scheiner*, 483 U.S. 266 (1987)). The "remedy a state court chooses to provide its citizens for violations of the Federal Constitution is primarily a question of state law." *Id.* A federal court should reverse a state court remedy only if the "chosen remedy [was] so inadequate that it amounted to a violation of defendant's constitutional rights." *Tyson v. Keane*, 159 F.3d 732, 738 (2d Cir. 1998).

The Appellate Division's decision to undertake a *de novo* review did not violate the petitioner's constitutional rights. "Where the state court has violated a defendant's due process rights, the Supremacy Clause mandates that the defendant be given another appeal pursuant to a federal writ of habeas corpus even if state law does not procedurally provide for such." *Restivo v. Walker*, 2000 WL 1375587, at *2 (W.D.N.Y. Sept. 20, 2000). That is what the Appellate Division did. After determining that the petitioner's rights were violated, the court assigned him a lawyer, ordered new briefing on the prosecutor's appeal, and considered the issue anew. As the respondent points out, federal courts have ordered similar remedies under similar circumstances. For example, in *Taveras v. Smith*, the Second Circuit Court of Appeals affirmed a district court order denying habeas corpus on the condition that the Appellate Division reinstate the appeal. 463 F.3d 141, 151 (2d Cir. 2006). Thus, the Appellate Division's remedy was not "contrary to," or "an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

**II.    Ineffective Assistance of Counsel**

The petitioner also renews the claim that he made to the Appellate Division—that the

lawyer who represented him on the prosecution's appeal of the trial court's speedy trial dismissal

was ineffective.  A petitioner claiming that his lawyer was ineffective must meet the two-

pronged test articulated in *Strickland v. Washington*: (1) "that counsel's representation fell below

an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different."  466

U.S. 668, 694 (1984).  The Supreme Court has advised that in state habeas petitions this inquiry

is "different from asking whether defense counsel's performance fell below *Strickland*'s

standard."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  Rather, state courts must be granted

a "deference and latitude that are not in operation when the case involves a review under the

Strickland standard itself."  *Id*.  A federal court "must determine what arguments or theories

supported, or . . . could have supported, the state court's decision," and must then determine

"whether it is possible fair-minded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. at 102.  The standard

was "meant" to be an exacting one; a state habeas petitioner must demonstrate that the state

court's decision was "so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fair minded disagreement."  *Id*. at 102-

03; *see also Shinn v. Kayer*, 592 U.S. ___ (2020) ("The prisoner must show that the state court's

decision is so obviously wrong that its error lies beyond any possibility for fairminded

disagreement." (quotation and citation omitted)).

Under the first prong of Strickland, "[a] convicted petitioner . . . must identify the acts or

omissions of counsel that are alleged not to have been the result of reasonable professional

judgment." *Strickland*, 466 U.S. at 690.  "Judicial scrutiny of counsel's performance must be

highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance." *Id*. at 689.  "[R]elief may be

warranted when a decision by counsel cannot be justified as a result of some kind of plausible

trial strategy." *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) (citing *Kimmelman v.*

*Morrison*, 477 U.S. 365, 385 (1986)).

      To satisfy the second prong, the petitioner must establish "a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694.  "The level of prejudice the [petitioner] need demonstrate lies

between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not

altered the outcome in the case.'"  *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting

*Strickland*, 466 U.S. at 693).  "The benchmark for judging any claim of ineffectiveness must be

whether counsel's conduct so undermined the proper functioning of the adversarial process that

the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

      The petitioner argues that his lawyer should have asked the Appellate Division to vacate

his conviction rather than ordering new briefing on the speedy trial dismissal.  Counsel did make

that argument to the Court of Appeals in separate leave applications, first after the Appellate

Division ordered new briefing on the prosecution's appeal and again after the Appellate Division

adhered to its original decision reinstating the indictment. [2]  (ECF No. 13-1 at 270; ECF No. 13-2

at 24.)  In both applications, counsel urged the Court of Appeals to "grant leave to clarify the

proper remedy for when a defendant establishes a violation of his federal and state constitutional

---

[2] The petitioner also filed *pro se* applications for leave to appeal.

right to counsel on appeal," and to resolve a split between the Appellate Divisions.  (ECF No. 13-1 at 273; ECF No. 13-2 at 27.)

There is no merit to the petitioner's claim that counsel should have made these arguments to the Appellate Division on the rehearing of the prosecutor's appeal of the speedy trial dismissal.  As counsel explained in her affirmation when the petitioner made this claim in state court, the scope of her assignment was "limited to representing the [petitioner] on the People's appeal from the 1988 dismissal order" and she could not argue in the respondent's brief that the Appellate Division's *coram nobis* remedy was "inadequate or inappropriate."  (ECF No. 13-2 at 335.)

Even if counsel had advanced the argument to the Appellate Division, she would not have succeeded.  The Appellate Division's remedy was the correct one.  As counsel explained, "[t]he Court of Appeals . . . has consistently held that when a criminal defendant is deprived of appellate counsel, the appellate decision must be vacated and the case remanded for a *de novo* appeal." (ECF No. 13-2 at 336.)  Thus, she had "no basis to argue that [the petitioner's] case should be dismissed entirely."  (*Id.* at 337.)  *See, e.g.*, *People v. Johnson*, 43 A.D.3d 1453, 841 (4th Dep't 2007) (because the defendant was denied the effective assistance of appellate counsel, the appropriate remedy was to vacate and consider the appeal *de novo*); *People v. LeFrois*, 151 A.D.2d 1046 (4th Dep't 1989) (same); *People v. Vasquez*, 70 N.Y.2d 1, 4 (1987) (same); *Torres v. McGrath*, 407 F.Supp.2d 551, 562 (S.D.N.Y. 2006) (the "failure to make a meritless argument does not amount to ineffective assistance.'" (quotation omitted)).  "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful" before the state's highest court.  *Hemstreet v. Greiner*, 367 F.3d 135, 142 (2d Cir. 2004), *vacated on other grounds*, 378 F.3d 265 (2d Cir. 2004); *see also*

*Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001) ("[The] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (internal quotation marks omitted)).  Appellate counsel was not ineffective for failing to advance a meritless claim.

## III.   Speedy Trial

Finally, the petitioner argues that the Appellate Division's 2016 decision to adhere to its original 1988 decision reinstating the indictment was contrary to or an unreasonable application of clearly established federal law.  As explained above, following *de novo* review of the trial court's decision to dismiss the petitioner's indictment for speedy trial act violations in 1988, the Appellate Division found that "there [wa]s no basis to vacate [the] original determination in the decision and order dated May 22, 1989 . . . reversing the order dismissing the indictment, and thereupon reinstating the indictment."  *People v. Clemente*, 139 A.D.3d 751, 753 (2d Dep't 2016).

The Supreme Court has enumerated a four-factor balancing test for a court to consider in assessing whether a defendant has been denied his right to a speedy trial: the length of the delay, the reasons for the delay, the defendant's assertion of his right, and the extent of prejudice to the defendant.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United States v. McGrath*, 622 F.2d 36, 40 (2d Cir. 1980).  The Court emphasized that these factors have no "talismanic qualities," and none is "either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial."  *Barker*, 407 U.S. at 533.  Rather, they are "related factors" that "must be considered together with such other circumstances as may be relevant."  *Id.*

The Appellate Division, which cited *Barker* in its decision, properly applied the *Barker* factors in determining that the petitioner was not denied his right to a speedy trial.  First, the

petitioner's indictment had been pending for about 14 months when the trial court dismissed it. While there is no bright-line rule for what constitutes an unconstitutional delay, courts have held that significantly longer delays did not violate a defendant's right to a speedy trial.  *See United States v. Fitzpatrick*, 437 F.2d 19, 26 (2d Cir. 1970) (30 month delay did not violate the defendant's right to a speedy trial); *Flowers v. Warden, Connecticut Corr. Institution, Somers*, 853 F.2d 131, 133 (2d Cir. 1988) (17-month delay, "while lengthy, is nevertheless considerably shorter than those in other cases where we have found no speedy trial violation.") (citing *McGrath*, 622 F.2d at 36 (24 months); *United States v. Lane*, 561 F.2d 1075, 1078 (2d Cir. 1977) (58 months)); *United States v. Fasanaro*, 471 F.2d 717 (2d Cir. 1973) (no violation despite a delay of over four years); *United States v. Saglimbene*, 471 F.2d 16, 17 (2d Cir. 1972) (no violation despite a delay of six years).

Second, the Appellate Division's conclusion that there was a valid reason for the delay— the need to locate witnesses—was correct.  *See Barker*, 407 U.S. at 531 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay."); *see also Brown v. Perez*, 2013 WL 5913306, at *12 (S.D.N.Y. Oct. 31, 2013), *report and recommendation adopted*, 2014 WL 5343309 (S.D.N.Y. Oct. 21, 2014) (the government's search for the only two witnesses who identified the defendant in a lineup was a justifiable delay); *Mallet v. Miller*, 432 F. Supp. 2d 366, 383 (S.D.N.Y. 2006) (the inability to locate the chief prosecution witness was a valid cause for delay).  Moreover, there is no suggestion that the delay was "attributable either to deliberate procrastination or even negligent inaction on the part of the Government."  *United States v. Lane*, 561 F.2d 1075, 1079 (2d Cir. 1977).  The prosecution coordinated with Interpol and the F.B.I. to attempt to locate two eyewitnesses to the murder—the petitioner's mother and sister—who they

believed had moved to the Philippines, and the petitioner has not presented any evidence that the prosecution was dilatory in these efforts.[3]

Finally, the Appellate Division concluded that the petitioner was not prejudiced by the delay. The petitioner argued that while the case was pending an allegedly material witness "moved without leaving a forwarding address or any other contact information." (ECF No. 13-1 at 394.) According to the petitioner, this witness, a bar owner, "could have verified that someone had tampered with [the petitioner's] drink" and that the petitioner was "experiencing psychotic delusions" on the night of the murder. (*Id.* at 395.) Even assuming that the bartender could have offered such testimony, or that a court would have admitted it, courts have held that the unavailability of witnesses does not outweigh the other *Barker* factors. *See, e.g.*, *U.S. ex re. Spina v. McQuillan*, 525 F.2d 813, 818 (2d Cir. 1975) (no speedy-trial violation even though defendant alleged that some of his witnesses became unavailable for trial); *United States v. Lasker*, 481 F.2d 229, 237 (2d Cir. 1973) (prejudice was "insubstantial" where defendant alleged "general claims of prejudice, such as damage to reputation . . . and the dulling of witnesses' memories," and two character witnesses for defendant died); *United States v. Infanti*, 474 F.2d 522, 528 (2d Cir. 1973) (no speedy trial violation from 28-month delay even though defendant alleged that two witnesses critical to his case had died).

In short, the Appellate Division's decision to reverse the trial court's dismissal of the indictment was not contrary to or an unreasonable application of established federal law.

## CONCLUSION

Accordingly, the petition for a writ of habeas corpus is denied in its entirety and the case is dismissed. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c). The

---

[3] There is no dispute about the third factor—whether the petitioner asserted his right. He did.

Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is respectfully directed to enter judgment and close this case.


**SO ORDERED.**

                                                           s/Ann M. Donnelly
                                           ANN M. DONNELLY
                                           United States District Judge


Dated: Brooklyn, New York
       January 4, 2021